```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
VALENTINA M. PERETTI ACUTI and PAUL J.
REITNAUER, III,

                Plaintiffs,
                                              MEMORANDUM AND ORDER
        - against -
                                               20 Civ. 6570 (NRB)
AUTHENTIC BRANDS GROUP LLC and ABG EPE
IP, LLC,

                Defendants.

--------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Valentina M. Peretti Acuti and Paul J. Reitnauer, III are the daughter and grandson, respectively, of the late Hugo Peretti ("Hugo"), the American composer who co-authored the musical composition entitled "Can't Help Falling In Love" (the "Composition"). Plaintiffs brought suit against Authentic Brands Group LLC and ABG EPE IP, LLC (together "Authentic") seeking a judgment declaring that they had successfully terminated a January 31, 1983 assignment (the "1983 Assignment") to Authentic's predecessors of the renewal term of the Composition by service on Authentic of a notice of termination dated August 14, 2014 (the "2014 Notice"). Authentic now moves to dismiss plaintiff's action, asserting that the attempted termination of Authentic's rights to the renewal term of the Composition by the 2014 Notice was invalid. For the following reasons, Authentic's motion to dismiss is

granted.

## BACKGROUND

### 1. Factual Context[1]

In 1961, Hugo, along with Luigi Creatore and George Weiss, created the Composition, which became highly popular, having been recorded by more than 450 artists, including No. 1 hits by Elvis Presley and UB40. Complaint, ECF No. 1 ("Compl.") ¶¶ 9-10. The Composition was originally registered in the U.S. Copyright Office as an unpublished work on January 16, 1961 and as a published work on December 11, 1961 pursuant to the Copyright Act of 1909, 35 Stat. 1075, 17 U.S.C. § 1 et seq. (1976 ed.) (the "1909 Act"). Id. ¶¶ 11-12.

In January of 1983, and several years after the passage of the Copyright Act of 1976, Pub. L. No. 94-553, 90 Stat. 2541., 17 U.S.C. § 1 et seq. (the "1976 Act"), Hugo, along with his wife June Peretti and their children, plaintiff Valentina M. Peretti Acuti and Katharine Peretti Reitnauer - the now-deceased mother of plaintiff Paul Reitnauer III – entered into the 1983 Assignment, granting their rights to the renewal term of the Composition to Julian J. Aberbach and Joachim Jean Aberbach (together, the

---

[1] Except where otherwise noted, the following facts are drawn primarily from the Complaint. We accept these facts as true for purposes of the Court's ruling on Authentic's motion to dismiss and draw all reasonable inferences in the plaintiff's favor. See Koch v. Christie's Int'l PLC, 699 F.3d 141, 145 (2d Cir. 2012).

"Aberbachs"), the predecessors-in-interest of Authentic. Id. ¶ 13. The 1983 Assignment provides, in relevant part, that Hugo and his wife and daughters "hereby sell, assign, transfer and deliver to [the Aberbachs, and their] successors and assigns, all of their right, title and interest vested or contingent in and to the United States renewal copyrights, and extension of renewal copyrights, of the Composition." Declaration of Brian D. Caplan, ECF No. 25, Ex. 1.[2]

Hugo died in May of 1986.[3] In January of 1989, the Composition's then-living co-authors, Weiss and Creatore, and Hugo's widow and daughters registered the Composition's renewal copyright with the U.S. Copyright Office. Compl. ¶¶ 11-12; Declaration of Peter Anderson, ECF No. 22, Exs. 2 & 3.[4]

In August of 2014, June Peretti[5] and plaintiff Peretti Acuti served a notice of termination on Authentic, purporting to terminate the grant of the renewal term of the Composition in the

---

[2]   See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations omitted).
[3]   The Complaint does not state when Hugo died, but plaintiffs do not contest Authentic's conclusion that he died prior to the beginning of the Composition's renewal term in 1989, and the Court's own research confirms his death in May of 1986.
[4]   Judicial notice is properly taken of filings with the Copyright Office, Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005), and "the [C]ourt may . . . consider matters of which judicial notice may be taken" in ruling on a motion to dismiss. Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (internal quotations omitted).
[5]   June Peretti died in March of 2015 and willed her interests in the Composition to the plaintiffs. Compl. ¶¶ 25-26.

1983 Assignment, with termination effective as of February of 2018. Compl. ¶ 16 & Ex. 1.  Approximately two years later in August of 2016, Authentic asserted through counsel that the 2014 Notice was defective and invalid.  Id. ¶ 27.  The parties continued to engage in discussions about the administration of the copyright over the next several years, including after the 2014 Notice's purported effective date.  Id. ¶¶ 29-37.  However, in June of 2020, Authentic's counsel once again asserted that the termination contained in the 2014 Notice was not effective and that Authentic's rights remained unaffected by the 2014 Notice.  Id. ¶ 38.

### 2. Procedural History

Plaintiffs filed their complaint against Authentic on August 18, 2020.  ECF No. 1.  On November 10, 2020, Authentic filed a letter requesting a conference to discuss its proposed motion to dismiss the Complaint.  ECF No. 14.  Plaintiffs responded by letter, ECF No. 16, and after reviewing the letters, this Court granted Authentic leave to file its motion.  ECF No. 17.  The motion to dismiss was filed on December 21, 2020, ECF No. 20, and the parties completed briefing on the motion on February 15, 2021.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining whether a claim has facial plausibility, "we accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). However, that tenet "is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

## DISCUSSION

### 1. Statutory Framework

"Since the earliest copyright statute in this country, the copyright term of ownership has been split between an original term and a renewal term." Stewart v. Abend, 495 U.S. 207, 217 (1990). "The renewal term permits the author, originally in a poor bargaining position, to renegotiate the terms of the grant once the value of the work has been tested." Id. at 218-219. When the Composition was created and registered in 1961, the 1909 Act provided authors a 28-year initial term of copyright protection plus a 28-year renewal term. Id. at 212.

In 1976, Congress passed the 1976 Act, which overhauled the 1909 Act and distinguished between works copyrighted before its effective date of January 1, 1978 and those copyrighted after, eliminating the renewal term for works copyrighted after the

effective date in favor of a unitary term of copyright.  However, as is applicable to the Composition, "[a]ny copyright, the first term of which is subsisting on January 1, 1978, shall endure for 28 years from the date is was originally secured."  17 U.S.C. § 304(a)(1)(A).  "[T]he author of such work, if the author is still living, [or] the widow, widower, or children of the author, if the author is not living . . . shall be entitled to a renewal and extension of the copyright in such work for a further term of 67 years."  Id. § 304(a)(1)(C).

The copyright in the renewed term "shall vest upon the beginning of such further term in any person who is entitled . . . to the renewal and extension of the copyright at the time the application [for renewal] is made" if an application for renewal is "made to the Copyright Office within [one] year before the expiration of the original term of copyright."  Id. § 304(a)(2)(B).

"The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law."  Id. § 201(d)(1).  However, pursuant to 17 U.S.C. § 203, "the exclusive or nonexclusive grant of a transfer or license of copyright or of any right under a copyright, executed by the author on or after January 1, 1978," is subject to termination under the following conditions:

> In the case of a grant executed by one author, termination of the grant may be effected by that author or, if the author is dead, by the

> person or persons who . . . own and are entitled to exercise a total of more than one-half of that author's termination interest. . . .
>
> Where an author is dead, his or her termination interest is owned, and may be exercised, as follows: The widow or widower owns the author's entire termination interest unless there are any surviving children or grandchildren of the author, in which case the widow or widower owns one-half of the author's interest . . . [and] the ownership of [the other] half of the author's interest is divided among [the surviving children or grandchildren] . . . on a per stripes bases.

### 2. Application

Given this operative statutory framework, Authentic argues that when Hugo and his family entered into the 1983 Assignment, they in fact transferred distinct contingent rights in the renewal term of the Composition. Because Hugo died prior to the beginning of the Composition's renewal term in 1989, his contingent right to the renewal term did not vest and instead was extinguished at the time of his death. It therefore did not transfer to the Aberbachs. Rather, according to Authentic, the contingent rights of Hugo's wife and daughters vested at the beginning of the renewal term and were the only rights that transferred to the Aberbachs. Because § 203 only provides that grants "executed by the author," are subject to termination, the rights to the renewal term of Hugo's widow and daughters are not subject to termination.

Plaintiffs argue that the term "grant" in § 203 refers not to

the specific right that the author transferred but rather to the instrument as a whole through which the transfer was made. Because Hugo affixed his signature to the 1983 Assignment and the 1983 Assignment is the operative instrument granting Authentic its rights to the renewal term of the Composition, it is therefore a grant "executed by the author" subject to termination. After Hugo's death, his termination interest transferred pursuant to § 203(a)(2) to his surviving widow and daughters and, so plaintiffs' argument goes, were validly exercised by Hugo's widow and living daughter through the 2014 Notice.

Here, the plain language and structure of the statute along with applicable case law compel us to adopt Authentic's reading of § 203. First, it is uncontested that Hugo's right to the renewal term of the Composition failed to vest and did not transfer to Authentic under the 1983 Assignment. Prior to the beginning of the renewal term, a living author has only a contingent interest in the renewal term and can transfer only the "expectancy in acquiring the renewal term." Est. of Burne Hogarth v. Edgar Rice Burroughs, Inc., 342 F.3d 149, 157 (2d Cir. 2003) (internal quotations omitted). "Like all purchasers of contingent interests, [the assignee] takes subject to the possibility that the contingency may not occur." Miller Music Corp. v. Charles N. Daniels, Inc., 362 U.S. 373, 378 (1960). "[A]ny assignment of renewal rights made during the original term is void if the author

-8-

dies before the renewal period." Stewart, 495 U.S. at 221 (internal quotations omitted).

Here, the Composition was copyrighted in 1961, and Hugo assigned his contingent rights in the renewal term to the Aberbachs in 1983, during the copyright's original term. He then died in 1986, prior to the beginning of the copyright's renewal period, which began in 1989. The assignment of his interest was therefore voided and as a result, the Aberbachs and their successors "hold[] nothing" from Hugo. Id. at 220.

Instead, the contingent rights of Hugo's wife and daughters to the renewal term of the Composition vested by operation of 17 U.S.C. § 304(a)(1)(C) at the beginning of the renewal term. See 3 Nimmer on Copyright § 11.03 (2021) ("In such circumstances [where the grantor of the renewal rights fails to survive until such rights vest], the renewal rights pass to the grantor's statutory successors and the original grantee takes nothing from the original grantor."). These rights thus successfully transferred to the Aberbachs through the 1983 Assignment and ultimately to Authentic.

The 1983 Assignment was executed after January 1, 1978 and therefore § 203 applies to determine whatever termination rights plaintiffs may have with respect to the assignment. However, under § 203, only those grants "executed by the author" are subject to termination. See Penguin Grp. (USA) Inc. v. Steinbeck, 537 F.3d 193, 199 (2d Cir. 2008) (noting that § 203 termination applies

"only to grants made by the author rather than to grants made by . . . other parties."). As explained above, the grant of the author, Hugo, failed to vest and expired before it could be transferred to the Aberbachs. Logic dictates that if there was no grant to the Aberbachs of the author's rights, there can be no termination.[6] Meanwhile, the grants of Hugo's wife and daughters were validly transferred, but because they are not grants "executed by the author," they cannot be terminated under § 203. As Professor Nimmer explains:

> An author's spouse or children may also execute, on or after January 1, 1978, a grant of contingent renewal rights in such a work. Such a grant would not be subject to termination because it was not executed by the author. If the renewal rights vest in the surviving spouse and children (because the author has died prior to the expiration of the first twenty-eight-year term), their prior grant of such renewal rights will effectively deprive them of any future interest in the work. They may not thereafter claim termination of the deceased author's original grant because it will have previously terminated by operation of law; the effectiveness of the author's grant beyond the first copyright term was contingent upon the author's survival.

3 Nimmer § 11.02.

Plaintiffs argue that we should instead construe the 1983 Assignment as a single "grant" within the meaning of § 203, which

---

[6] Subsequently, while Hugo's successors may "own" his termination interest after his death pursuant to 17 U.S.C. § 203(a)(2), because the author's grant had expired, there is no grant to terminate, and the termination interest is likewise voided.

-10-

– because it was signed by Hugo – was "executed by the author" so as to be subject to termination. This position finds no support in case law, nor does it accord with the Copyright Act's language and structure.

To execute an agreement is to "make [it] valid by signing; to bring [it] into its final, legally enforceable form." Execute, Black's Law Dictionary (11th ed. 2019). Under the Copyright Act, an execution of a transfer of copyright ownership "is not valid unless an instrument of conveyance . . . is in writing and signed by the owner of the rights conveyed." 17 U.S.C. § 204 (emphasis added). Thus, in this context, execution encompasses both the act of signing along with authority to transfer the copyright interest. Here, Hugo only had authority to transfer his own interest in the renewal term. See Spinelli v. Nat'l Football League, 903 F.3d 185, 198 (2d Cir. 2018) (quoting Davis v. Blige, 505 F.3d 90, 99 (2d Cir. 2007)) (observing that the owner of a copyright interest "'may not convey more than he owns'"). Under § 203, Hugo cannot be said to have "executed" the grants of his wife's and daughters' interests to the Aberbachs, as their statutory rights existed independently from his own. A simple counterfactual makes the point: had Hugo signed a separate instrument conveying his interest, and his family another, there would be no question that his separate grant would have terminated entirely upon his death, and his family would have no right to terminate their own

-11-

conveyance once their interests had vested. Plaintiffs' formalistic reasoning fails to explain why the result should be different simply because the family conveyed their various interests through one instrument as opposed to through separate agreements.[7]

Plaintiffs' reading would likewise undermine the conscious decision of Congress to establish separate termination regimes for grants of copyright interests made before and after the effective date of the 1976 Act. The Copyright Act provides for the termination of grants of the renewal term "executed before January 1, 1978, by <u>any of the persons</u> designated by subsection (a)(1)(C) of this section" which includes the author, and the author's spouse and children. 17 U.S.C. § 304(c) (emphasis added). The section then provides that, "[i]n the case of a grant <u>executed by a person or person other than the author</u>, termination of the grant may be effected by the surviving person or persons who executed it." <u>Id.</u> (emphasis added). The legislative history of the 1976 Act provides color to this distinction between § 304(c) and § 203:

> Subsection (c) of section 304 is a close but not exact counterpart of section 203. . . . The bill distinguishes between the persons who can terminate a grant under section 203 and those entitled to terminate a grant covering an extended term under section 304. Instead

---

[7] Plaintiffs point out that § 203(a)(1) contemplates "two or more authors" executing a singular grant, but this observation misses the point. Multiple persons can execute one instrument conveying their rights, but they independently execute that agreement only as to the rights that they, as individuals, own.

> of being limited to transfers and licenses executed by the author [as is the case under section 203], the right of termination under section 304(c) also extends to grants executed by those beneficiaries of the author who can claim renewal under the present law: his or her widow or widower, children, executors, or next of kin.

H.R. Rep. No. 94-1476, at 140.  Meanwhile, "[t]he right of termination [pursuant to section 203] would be confined to inter vivos transfers or licenses executed by the author, and would not apply to transfers by the author's successors in interest." Id. at 125.  "Section 203 reflects a practical compromise that will further the objectives of the copyright law while recognizing the problems and legitimate needs of all interests involved." Id. at 124.[8]  By claiming that the 2014 Notice terminated the grant of Hugo's widow and daughters of the renewal term of the Composition, plaintiffs attempt to subvert Congress's intent to subject to potential termination only those transfers made after January 1, 1978 that were granted by the author.  As explained above, however, such a result is not in keeping with the text and structure of the Copyright Act, and the 2014 Notice must be considered a nullity.

---

[8] Professor Nimmer posits that Congress's intentions in removing the termination rights for authors' successors with regard to their own post-1977 grants primarily had to do with changes made to the renewal terms of works copyrighted after the effective date of the 1976 Act that do not apply to works copyrighted before the effective date.  3 Nimmer § 11.02.  Be that as it may, Congress still devised to use the date of the grant rather than the date of the copyright in defining termination rights, and plaintiffs do not, and cannot, suggest that their termination rights should be analyzed pursuant to § 304(c), which only applies to grants made prior to the effective date of the 1976 Act.

**CONCLUSION**

For the foregoing reasons, plaintiffs are not entitled to the declaratory judgment they seek, and Authentic's motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 20 and to close the case.[9]

**SO ORDERED.**

Dated:   New York, New York
         August 13, 2021

_____
         NAOMI REICE BUCHWALD
         UNITED STATES DISTRICT JUDGE

---

[9]   As Authentic was the only party to request oral argument and as it has prevailed on its motion, the Court concludes that oral argument would not be productive.